UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Petitioner,

-against- 1:22-CV-769 (LEK/ML)

LAURIE WEINLEIN, *et al.*,

Respondents.

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On July 22, 2022, the United States of America ("Petitioner" or "Government") commenced this action seeking to foreclose a federal lien on real property owned by Respondent Laurie Weinlein. Dkt. No. 1 ("Foreclosure Petition"). Respondent challenged this action on the grounds that imposing a restitution obligation against her would violate the *Ex Post Facto* Clause of the Constitution. *See* No. 98-CR-0204 at Dkt. 112 ("Criminal Docket"). In March 2022, the Court rejected Respondent's *Ex Post Facto* Clause challenge, and Respondent appealed. *See* Criminal Docket at Dkt. Nos. 119, 121. On July 25, 2024, the Second Circuit affirmed this Courts holding with regard to the *Ex Post Facto* clause. *United States v. Weinlein*, 109 F.4th 91 (2d Cir. 2024), *cert denied*, 145 S. Ct. 1425 (2025).

On October 9, 2024, the Second Circuit issued a mandate in this case restoring jurisdiction to this Court. *United States v. Weinlein*, No. 22-533, Dkt. No. 120 (2d Cir. Oct. 9, 2024) ("Second Circuit Mandate"). On October 28, 2024, Petitioner filed a motion for leave to amend its foreclosure petition, Dkt. No. 24 ("Motion to Amend"), which this Court granted on

September 23, 2025. Dkt. No. 39 ("Amendment MDO"). Petitioner filed its amended petition on September 26, 2025. Dkt. No. 40 ("Amended Foreclosure Petition").

On January 29, 2026, Respondent filed her Motion to Dismiss. Dkt. No. 65 ("Motion"). Petitioner filed its response in opposition on February 20, 2026, Dkt. No. 67 ("Response"), and Respondent filed her reply on March 19, 2026, Dkt. No. 71 ("Reply"). For the reasons that follow, Respondent's Motion is granted.

## II. BACKGROUND

### A. Factual Background

At this stage in the litigation, the Court assumes the parties' general familiarity with the facts of the case. *See generally* Amended Foreclosure Petition.

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court

has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *Id.* at 679.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard except that 'a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Hoops v. Key Span Energy*, 794 F. Supp. 2d 371, 375–76 (E.D.N.Y. 2011) (quoting *Makarova*, 201 F.3d at 113). "[W]here a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the Court first must address the 12(b)(1) motion." *Obstfeld v. Unifin, Inc.*, 774 F. Supp. 3d 497, 501 (E.D.N.Y. 2025).

## IV. DISCUSSION

Respondent argues that the Government lacks standing in this action because Respondent's restitution liability and the corresponding lien expired in 2024. Mot. at 5–16[1]. In response the Government argues that: (1) subject matter jurisdiction is established at the time of filing, and that subsequent events cannot defeat jurisdiction. Resp. at 5–8; (2) the text of 18 U.S.C. § 3613, as well as precedent, demonstrate that the Government timely filed its claim, and

[1] The Court acknowledges that Respondent additionally raises the argument that the Government has "failed to plead essential facts establishing timeliness under 18 U.S.C. § 3613." Mot. at 16–18. As the Court agrees with Respondent that the Government lacks statutory enforcement authority, it need not reach this issue.

the lien is thus enforceable, *id.* at 8–20; (3) the legislative history of the MVRA supports the Government's position that it timely filed its claim, *id.* at 20–21; and (4) in the alternative, the Court should find that Section 3613 is equitably tolled, *id.* at 22–24. The Court will address each of these arguments in turn.

**A. 12(b)(1) Subject Matter Jurisdiction**

Respondent moves to dismiss the Amended Foreclosure Petition for lack of subject matter jurisdiction. Mot. at 13–15. Respondent argues that "[b]y failing to plead facts plausibly demonstrating that Ms. Weinlein's restitution liability extended beyond November 10, 2024, the Government failed to plead facts showing that the foreclosure sought . . . is redressable by the Court." *Id.* at 14. Therefore, Respondent concludes, there is no standing, and no subject matter jurisdiction. *Id.* at 15–16. The Government argues that it has been granted the authority by statute to "enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." Resp. at 22 (quoting 18 U.S.C. § 3613(a)). The Government thus concludes that standing and subject matter jurisdiction are present. *Id.*

Respondent's argument relies on the fact that the statute in question, 18 U.S.C. § 3613(c), is a statute of repose.[2] *See* Reply at 2. "[S]tatutes of . . . repose are . . . non-jurisdictional claims-processing rules." *Browe v. CTC Corp.*, 15 F.4th 175, 191 (2d Cir. 2021). In *Browe*, the Court found that as a non-jurisdictional rule, arguments based on statutes of repose could be waived. *Id.* This Court concludes from *Browe* that a statute of repose cannot defeat subject matter jurisdiction, or its prerequisite, standing. *See Johnson v. Hunter Warfield, Inc.*, No. 22-CV-

[2] The merits of Respondent's statute of repose argument are discussed later in this opinion.

00122, 2022 WL 1421815, at *1 (N.D.N.Y. May 5, 2022). Therefore, Respondent's argument that the statute of repose strips the Government of standing is unavailing.

**B. 12(b)(6) Failure to State a Claim**

Respondent argues that the Government's ability to enforce the lien against her has lapsed. *See* Mot. at 5–13; 18 U.S.C. § 3613. Respondent concludes that the "Petition does not state a viable cause of action under the enforcement statute it invokes," and must be dismissed under Rule 12(b)(6). Mot. at 14–15. The Government counters that it retains the statutory authority to enforce the lien. Resp. at 8–24. For the reasons that follow, the Court finds that the Government has no viable cause of action, and dismisses this action under Rule 12(b)(6).

*1. Plain Meaning of 18 U.S.C. § 3613(c)*

Respondent argues that the Government's ability to enforce a restitution lien against Respondent expired in 2024, twenty-years after she was released from prison. Mot. at 5–16. The Government counters, arguing that Section 3613(c)'s reference to the tax code permits it to enforce a lien as long as the pertinent enforcement action was filed prior to the MVRA's twenty-year limitations period. Resp. at 8–20.

"When interpreting a statutory provision, [a court] begin[s] with the language of the statute." *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013). Where a statute's language is unambiguous, the "sole function of the court[] is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). In determining whether the text of a given statute is ambiguous, a court may look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

"[W]hen a statute refers to a general subject, the statute adopts the law on the subject as it exists whenever a question under the statute arises." *Jam v. International Finance Corporation*, 586 U.S. 199, 209 (2019) (citing 2 J. Sutherland, Statutory Construction §§ 5207–08 (3d ed. 1943)). On the other hand, when a statute "refers to another statute by specific title or section number [it] in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, without any subsequent amendments." *Id.* at 209–10 (citing *Culver v. People*, 161 Ill. 89, 95–99 (1896)).

Moreover, the Second Circuit "adhere[s] to 'the principle that criminal limitations statutes are to be liberally interpreted in favor of repose.'" *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (quoting *Toussie v. United States*, 397 U.S 112, 115 (1970)).

Both parties are in agreement that the MVRA's twenty-year post-release collection period applies to both a restitution lien under Section 3613(c) and restitution liability under Section 3613(b). *See* Mot. at 5–10; Resp. at 15 n.4. Therefore, the Court will limit its analysis in this section to the question of whether the plain text of Section 3613(c) requires that the lien expires when the twenty-year collection period lapses. *See* Resp. at 7.

Starting with the text of the relevant statutes, Section 3613 (emphasis added) states in relevant part:

> **(b) Termination of liability**—
> The liability to pay a fine shall terminate the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person fined, or upon the death of the individual fined. The liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution.
>
> **(c) Lien**—
> A fine imposed . . . or an order of restitution made pursuant to [the MVRA] is a lien in favor of the United States on all property and

> rights to property of the person fined *as if the liability of person fined were a liability for a tax assessed under the Internal Revenue Code of 1986*. The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).

18 U.S.C. § 3613(b)–(c).

The Government principally argues that Section 3613(c)'s reference to the Internal Revenue Code: (1) includes 26 U.S.C. § 6502(a); and (2) under Section 6502(a) a timely filed lawsuit extends the collection period such that the Government is allowed to collect after Section 3613(c)'s collection period has lapsed. Resp. at 8–19. The Court will address each of these arguments in turn.

First, the Court agrees that Section 3613(c)'s reference to the Internal Revenue Code includes Section 6502(a). *See* Resp. at 9–10. As the Supreme Court recognized in *Jam*, when Congress "refers to another statute by specific title . . . [it] in effect cuts and pastes the referenced statute." *Jam*, 586 U.S. at 209 (2019). Indeed, when Congress wants to "refer only to a particular subsection or paragraph," it knows how to do so. *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 300 (2017). In Section 3613(c), Congress included a general reference to the provisions of the Internal Revenue Code related to tax liens. *See* 18 U.S.C. § 3613(c). It did not include any disclaimers or exceptions related to Section 6502(a), nor does the Court find any evidence that it intended to do so. *See id.* The Court will accordingly continue to assess the Government's arguments relating to the text of Section 3613(b)–(c), and Section 6502(a).

Next, the Government argues that, when read together, Sections 6502 and 3613 permit it to enforce a lien when it has filed an enforcement action in court within the MVRA's twenty-year collection period. Resp. at 9. The Court is not convinced.

Section 6502 states in relevant part:

> **(a) Length of period**—
>
> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
>
> (1) within 10 years after the assessment of the tax . . . .
>
> If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected . . . shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes *unenforceable*.

26 U.S.C. § 6502(a) (emphasis added).

To start, the plain text of Section 3613(c) clearly states that a lien does not extend past the point at which "the [underlying] liability is satisfied, remitted, set aside or is terminated under subsection (b)." 18 U.S.C. § 3613(c). A defendant's liability to pay restitution under Section 3613(b) is terminated either twenty years post-judgment or twenty years after release from prison. *See* 18 U.S.C. § 3613(b). Therefore, under a natural reading of the statute, the Government's ability to enforce a defendant's restitution obligation through a lien imposed on the defendant's assets expires at the point the defendant's liability is terminated. *See* 18 U.S.C. § 3613(b)–(c).

The Court acknowledges that Section 3613(c) makes a reference to tax liens and suggests that liens should be enforced under Section 3613(c) in the same manner as federal tax liens. *See* 18 U.S.C. § 3613(c). However, the Court is not convinced that this reference permits the Government, through Section 6502(a), to extend the collection period.

First, Section 6502(a)'s collection period would appear, on its face, to be in direct conflict with the twenty-year collection period established in Section 3613(c). As the Government recognizes, Section 3613(a) includes a "notwithstanding" clause which "is intended

to override conflict between competing statutory provisions of other applicable laws." Resp. at 13 (citing *United States v. Shkreli*, 47 F.4th 65, 71–72 (2d Cir. 2022)). The Government suggests that this clause applies to Sections 6502(a) and 3613(c) in a piecemeal fashion. Resp. at 9–11, 13. Under their theory, the notwithstanding clause allows the 20-year collection period from Section 3613(c) to negate Section 6502(a)'s 10-year collection period while simultaneously allowing Section 6502(a)'s tolling provisions to negate Section 3613(c)'s termination language. *Id.* The Court is not convinced. At a minimum, the Court finds that to the extent that the notwithstanding clause applies in this context, those provisions that would permit the Government to enforce a lien after it has lapsed as barred by the plain text of Section 3613(c).

Second, even if *arguendo*, Section 6502(a) did apply in this context, the text of the statute when read along with Section 3613 does not support the Government's position. Relevantly, Section 6502(a) limits the extension of the collection period for tax liens "until the liability for the tax . . . is satisfied or becomes unenforceable." 26 U.S.C. § 6502(a). Definitionally, a lien that has been "terminated" must be "unenforceable." *See United States v. Jones*, 2026 WL 161150, at *4 (D.D.C. Jan. 21, 2026) ("[T]ermination of the liability . . . terminate[s] the lien and render[s] it unenforceable."); *United States v. Norwood*, 49 F.4th 189, 213 (3rd Cir. 2022) ("[I]f the Government tolls a lien by commencing a collection action, that lien will still expire when the liability for the tax . . . becomes unenforceable [under Section 3613(b)].") (citation omitted).

The Government in support of its preferred reading of Sections 6502(a) and 3613(c) relies heavily on *United States v. Pegg*, No. 16-CV-60289, 2016 WL 5234616 (S.D. Fla. Sept. 22, 2016). Resp. at 10–16. In *Pegg*, the U.S. District Court for the Southern District of Florida held that the United States could enforce a restitution lien against a defendant outside of the

twenty-year collection period established in Section 3613(b) where it had filed a claim against Pegg before the MVRA's limitations period lapsed. *Pegg*, 2016 WL 5234616 at * 2.

The Court is not convinced by the Southern District of Florida's reasoning. In *Pegg*, the court reasoned that a "restitution lien has the 'same effect as a federal tax lien,'" and that in the tax context, the "lien does not lapse" as long as the Government "files suit to enforce the tax lien prior to the expiration of the statute of limitations." *Id.* (quoting *United States v. De* Cespedes, 603 Fed. Appx. 769, 711 (11th Cir. 2015)). In coming to this conclusion, the *Pegg* court entirely failed to grapple with the text of Section 3613(b) or (c), Section 6502(a), or Section 3613(a)'s notwithstanding clause. *See id.* It also put forth an interpretation of Section 3613(c) that would make the references to the lien's termination superfluous, by permitting the government to extend the collection period past the point at which the lien has been terminated, which is to be avoided if at all possible. *See Pegg*, 2016 WL 5234616 at *2; *Panjiva, Inc. v. United States Customs and Border Protection*, 342 F. Supp. 3d 481, 490 (S.D.N.Y. 2018) ("[W]here parties offer two competing interpretations of a statute, the rule against superfluities 'favors that interpretation which avoids surplusage.'") (quoting *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012)). The Court accordingly finds the Government's reliance on *Pegg* to be unavailing.

The government next cites to *United States v. Weinlein*, 109 F.4th 91 (2d Cir. 2024) ("*Weinlein I*") for the proposition that Section 6502's extended collection period applies to the Respondent. *See* Resp. at 14. The Court does not find the Government's argument persuasive.

In *Weinlein I*, the U.S. Court of Appeals for the Second Circuit, at an earlier stage in this case, rejected Respondent's position that the ex post facto clause precluded the retroactive

application of the MVRA to her conduct. *Weinlein I*, 109 F.4th at 100–103.[3] The Government argues that in *Weinlein I* the "Second Circuit's analysis went beyond [the ex post facto clause]" and that it "strongly indicated it would apply an extended enforcement period through Section 6502(a)." Resp. at 14. In making this argument the Government draws the Court's attention to a singular line in the case where the Second Circuit noted that "not much violence is done to our instinctive feelings of justice and fair play when the statute of limitations is extended while the chase is on." *Id.* (quoting *Weinlein I*, 109 F.4th at 102 n.11). It asks the Court to infer from this single line of dicta the proposition that Section 6502(a)'s tolling provisions apply to terminated restitution liens under the MVRA. *Id.*

The Court declines to take the Government's invitation. Apart from the fact that the Government's argument entirely hinges on non-binding dicta, it also ignores the difference in context between *Weinlein I* and this case. In *Weinlein I*, the Second Circuit held that applying the MVRA to Weinlein did not violate the ex post facto clause's prohibition against the imposition of retroactive criminal punishment. *See Weinlein I*, 109 F.4th at 102–103. The Second Circuit based its holding, in part, on the fact that the collection period had not yet lapsed. *See Id.* ("Extending the statute of limitations *before* it has expired may increase the risk of prosecution,

[3] The Court acknowledges Respondent's argument that the recent Supreme Court case *Ellingburg v. United States*, 607 U.S. 163 (2026) "calls into question" the Second Circuit's holding in *Weinlein I*. *See* Mot. at 4 n.1. The Court, however, disagrees. The Supreme Court's holding in *Ellingburg* was that restitution under the MVRA is a criminal punishment such that the *Ex Post Facto* Clause applies to restitution orders. *See Ellingburg*, 607 U.S. at 167–68. The Second Circuit, in contrast, assumed that the *Ex Post Facto* clause applied to criminal restitution orders under the MVRA and found that the "retroactive application of the MVRA enforcement period did not violate the *Ex Post Facto* Clause." *Weinlein I*, 109 F.4th at 98. As *Ellingburg* did not disturb circuit precedent (and indeed confirmed the approach taken by the Second Circuit), this Court remains bound by the Second Circuit's decision in *Weinlein I* and will continue to apply it.

but it does not violate the ex post facto clause because the defendant has not yet acquired the right to be free from that risk.") (emphasis added).

This case, in its present posture, presents considerably different facts. At this point, the collection period established by the MVRA has lapsed, and the Government is not seeking to extend the statute of limitations "while the chase is on," but is instead asking the Court to permit it to engage in enforcement after the Respondent has been freed from the risk of prosecution. Resp. at 14. Faced with these radically different factual scenarios, the Court does not find that *Weinlein I* supports the Government's argument.

Accordingly, the Court finds that the provision of Section 6502(a) that permits the government to toll the collection period for tax liens is inapplicable after the point that a defendant's restitution liability terminates under Section 3613(b).

2. *Legislative History, Purpose & Structure*

The Government argues in the alternative that, regardless of the plain text of Section 3613(b), the legislative history, statutory history, purpose, and structure of the MVRA require the Court to adopt the Government's preferred reading. Resp. at 11, 20–21. The Court will address each of these arguments in turn.

a. Legislative History

First, the Government argues that, to the extent the plain text of the MVRA is ambiguous, the legislative history of the MVRA supports the Government's interpretation. Resp. at 20–21. The Court disagrees.

Where the text of a statute is ambiguous, a court "may consult the legislative history to discern 'the legislative purpose as revealed by the history of the statute.'" *Kozeny*, 541 F.3d at 171 (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*,

508 U.S. 602, 627 (1993)). However, a court must act with great caution when utilizing legislative history as an interpretive aid, to avoid violating "the fundamental precept that 'we are governed by laws, not by the intentions of legislators.'" *See FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, No. 24-345, 2026 WL 1686059, at *7 (U.S. June 11, 2026) (quoting *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring)); *see also Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 617–21 (1991) (Scalia, J. concurring) (describing the unreliability of committee reports as indicia of Congressional intent).

"[A]mbiguous legislative history [cannot be used] to muddy clear statutory language." *Azar v. Allina Health Services*, 587 U.S. 566, 579–80 (2019) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011). Moreover, even in cases involving ambiguous statutory text, the Supreme Court has refused to give "authoritative weight to a single passage of legislative history that is in no way anchored in the text of the statute." *Shannon v. United States*, 512 U.S. 573, 584 (1994).

With these principles in mind, the Court will now analyze the legislative history of Section 3613(c) as modified by the Mandatory Victims Restitution Act.

In 1982, Congress passed the "Victim and Witness Protection Act" ("VWPA"), which "took a relatively relaxed view of restitution," vesting the sentencing judge with the discretion to grant a restitution order." *Pinson v. United States*, 793 F. Supp. 3d 1355, 1360 (S.D. Ala. 2025); 18 U.S.C. § 3663. In 1996, Congress passed the "Mandatory Victims Restitution Act" ("MVRA"), which "made restitution mandatory for certain crimes, while retaining the discretionary VWPA." *Pinson*, 793 F. Supp. 3d at 1360.

In its report accompanying the 1996 amendments, the Senate Judiciary Committee described the effect of the amendments to Section 3613(b) as follows:

> [Section 3613(b)] provides that a restitution order constitutes a lien on the [defendant's] property in favor of the victim (or in favor of the United States in certain circumstances), extends the period of a lien pursuant to a fine or restitution to 20 years after the defendant's release from incarceration, removes the provision which extinguishes the obligation to pay a fine after 20 years, and adds provisions relating to jointly held property to provisions governing liens for the enforcement of fines and restitution.

S. Rep. No. 104-179, at 15–16 (1995).

It also described the overall purpose for modifying the VWPA as: "[C]onsolidating the procedures for the collection of unpaid restitution with existing procedures for the collection of unpaid fines, while at the same time strengthening those procedures. . . . [The MVRA] is needed to ensure that . . . [victims] receive the restitution that they are due." *Id.* at 12.

The Government argues that this history "leaves no room for doubt . . . [that] Congress intended the MVRA to provide the Government with the tools necessary to see enforcement actions through to their conclusion," and therefore, the twenty-year collection period is inapplicable in this case. Resp. at 21. The Court disagrees.

To start, the Court does not find the use of legislative history to be proper in this case. As discussed in greater detail above, Section 3613(b) unambiguously establishes a twenty-year collection period that lapses upon the termination of the underlying liability. *See supra* at 4–10. The Government's request for the Court to attempt to divine Congressional intent from the accompanying Senate Report in this case would therefore only act "to muddy clear statutory language." *Azar*, 587 U.S. at 579–80.

The passage the Government identifies in support of its position is also not in any way "anchored in the text of the statute." *Shannon*, 512 U.S. at 583. Here, the Government is asking the Court to extrapolate from the Senate Judiciary Committee's general statement of the purpose of the MVRA as strengthening the existing restitution procedures, the ability to collect after the

collection period has lapsed. Resp. at 21; S. Rep. No. 104-79, § 202, at 12 (1995). As this general statement of purpose is not anchored in the text of the statute, the Court will follow precedent and refuse to give it any authoritative weight. *See Shannon*, 512 U.S. at 583.

Even assuming, *arguendo*, that the use of legislative history would be proper in this case, the Government's argument would remain unavailing. The Court is not convinced that Congressional intent to "provide the Government with the tools necessary to see enforcement actions through to their conclusion" necessarily means that the Government must be allowed to collection after the collection period has lapsed. Resp. at 21. The twenty-year collection period may represent a legislative judgment balancing the interests of criminal defendants in finality with the Government's ability to collect restitution. Indeed, the mere fact that the overall purpose of the act was to "strengthen [collection] procedures" does not tell us anything about how Congress intended the collection period to operate. *See* Resp. at 21.

Accordingly, for the reasons stated above, the Court is not convinced that the use of legislative history is proper here, or that the legislative history of Section 3613(b) supports the Government's reading of the statute.

b. Context, Purpose & Structure

The Government further argues that the Court should adopt the Government's preferred interpretation of the MVRA as the context, purpose, and structure of the MVRA supports its reading. Resp. at 11–12.

"The meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hospital*, 502 U.S. 215, 220–21 n. 9 (1991). When interpreting statutes, courts are to consider the "placement and purpose [of a provision] in the statutory scheme." *Bailey v. United States*, 516 U.S. 137, 145 (1995); *Pulsifer v. United States*, 601 U.S. 124, 141 (2024) (noting that

courts can choose between two textually permissible interpretations "by reviewing text in context"). However, the Supreme Court has cautioned that "[r]eliance on context and structure in statutory interpretation is a 'subtle business,'" and that courts should be wary of "attempted interpretation . . . becom[ing] legislation itself." *King v. Burwell*, 576 U.S. 473, 498 (2015).

Here, the Government specifically argues that "the clear purpose of the MVRA was to enhance the enforceability of restitution, not handicap it," and that accordingly Respondent's interpretation of the MVRA "cannot be squared with the law." Resp. at 12. The Court is not convinced.

The Government's chief source of authority for its argument that the Respondent's interpretation of the MVRA runs contrary to its purpose, and must accordingly be discounted, is *King*, 576 U.S. 473. In that case, the Supreme Court held that certain tax credits provided by the Affordable Care Act ("ACA") to subsidize health care premiums were available on federally run health care exchanges under 26 U.S.C. § 36B, contrary to the plain text of the statute. *Id.* Section 36B in relevant part stated that the ACA premium assistant tax credits were available only for qualified individuals who "were enrolled in through an Exchange established by the State under [Section 1311]. 26 U.S.C. § 36B(b)(2)(A). A state was further defined by the act to include "each of the 50 states and the District of Columbia," and was referenced in countless other sections in ways that implied that Congress meant one of the 50 states. *See* 42 U.S.C. §§ 18024(d) (defining a state); 18032(f)(1)(A) (defining qualified individuals as individuals who "reside[] in the State that established the Exchange"); 18031(d)(2)(A) (requiring exchanges to "make available qualified health plans to qualified individuals").

The Supreme Court held in *King* that despite the plain text of the ACA, the context and structure of the act required that premium assistance tax credits be available on federal

exchanges. *King*, 576 U.S. at 497–98. It reasoned that the natural reading of Section 36B would result in two of the act's major reforms, the tax credits and coverage requirements, not being available in states with federally operated exchanges, the result being a "death spiral" of a state's exchange-based insurance market. *Id.* at 494. It also noted that Section 36B itself contained provisions that "make anyone in [certain] specified income range[s] eligible to receive a tax credit." *Id.* at 496. Together the Supreme Court found that these provisions support the proposition that the natural reading of Section 36B is "untenable" and that it was "implausible that Congress meant the Act to operate in . . . the manner" required by the natural reading of the statue." *Id.* at 494–97.

Here, in contrast, the Government has not convinced the Court that the natural reading of Section 3613(c) is "untenable," or that the structure and context of the MVRA suggest that Congress clearly intended to allow for the collection period to be extended by the filing of a lawsuit.

Unlike the ACA, the termination of the lien upon the lapse of the underlying liability does not defeat the entire point of the legislative scheme. *See King*, 576 U.S. at 497–98. Indeed, it is entirely plausible that, in drafting the MVRA, Congress made a conscious choice to limit the ability for the Government to continue to seek restitution from defendants multiple decades after they had served their time. Also, unlike in *King*, the statute does not have multiple complex and interlocking sections that provide a comprehensive regulatory scheme. Rather the Government hangs its hat on a single provision of the Internal Revenue Code in arguing that the Court ignore the plain text of the MVRA. The Court is not persuaded.

*3. Equitable Tolling*

The Government's final argument, in the alternative, is that the Court should allow for equitable tolling in this case. Resp. at 22–24. The Court disagrees.

"Statutory time bars can be divided into two categories: statutes of limitations and statutes of repose." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 504 (2017) ("*CALPERS*"). A statute of limitations is "designed to encourage plaintiffs to pursue diligent prosecution of known claims." *Id.* (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014)) (internal quotes omitted). On the other hand, a "statute of repose [is] enacted to give more explicit and certain protection to defendants." *Id.* at 505. It represents a "legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Id.* (quoting *CTS Corp.*, 573 U.S. at 8). Functionally, statutes of repose act as an "absolute bar on a defendant's temporal liability." *CTS Corp.*, 573 U.S. at 8. Therefore, as the Supreme Court has repeatedly stated, "statutes of repose are not subject to equitable tolling." *CALPERS*, 582 U.S. at 508; *see CTS Corp.*, 573 U.S. at 9; *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).

Here, Section 3613(c) of the MVRA is clearly a statute of repose and therefore cannot be equitably tolled. It states that the "lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, set aside, or is terminated under subsection (b).". As was the case in *CALPERS*, it "admits of no exception and on its face creates a fixed bar against future liability." 582 U.S. at 505. Indeed, it also runs from the entry of judgment or the defendant's release from prison, and not from the accrual of the claim. *See* 18 U.S.C. § 3613(c).

Further, Sections 3613(b) and (c) also do not contain plaintiff-facing language but speak of the point in time at which a defendant is no longer liable. *See Corner Post, Inc. v. Board of*

*Governors of Federal Reserve System*, 603 U.S. 799, 810–13 (2024) (finding a statute that included the word "accrue" along with other plaintiff-centered language was not a statute of repose); 18 U.S.C. §§ 3613(b)–(c).

Accordingly, the Court finds that equitable tolling is not available in this case.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Respondent's Motion to Dismiss, Dkt. No. 65, is GRANTED; and it is further,

**ORDERED**, that the Amended Foreclosure Petition, Dkt. No. 40, is DISMISSED; and it is further,

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 21, 2026
Albany, New York

LAWRENCE E. KAHN
United States District Judge